# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BULL & BATCH, INC, d/b/a KINGMADE JERKY, an Arizona corporation. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No.: JURY DEMANDED |
| FISHER CONTAINER CORP., An Illinois corporation, | ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, BULL & BATCH, INC., d/b/a KINGMADE JERKY (hereinafter "Kingmade"), by and through its attorneys, McKnight, Kitzinger & Pravdic, LLC, and for its Complaint against the Defendant, FISHER CONTAINER CORP. (hereinafter "Fisher"), states as follows:

### JURISDICTION AND VENUE

1. This is an action based upon diversity of citizenship, 28 U.S.C. Section 1332.

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 2201 and 2202. This Court also has jurisdiction of the Illinois law claims under 28 U.S.C. Section 1367(a).

3. Venue is proper under 28 U.S.C. s1391(b) and 1391(c) in that the Defendants transact business in the state of Illinois and the Northern District of Illinois.

## PARTIES

4. Plaintiff, Bull & Batch, Inc., d/b/a Kingmade Jerky, was and is a domestic Arizona corporation with its principal place of business located at 2655 W. Anthem Way, Suite A-109-335, Anthem, AZ, 85086 and was and is in the business of selling food products, specifically beef jerky products.

5. Defendant, Fisher Container Corp., was and is a domestic Illinois corporation with its principal place of business located at 1111 Busch Parkway, Buffalo Grove, IL 60089, and was and is in the business of manufacturing industrial packaging.

## BACKGROUND FACTS

6. Plaintiff launched its business on or about July, 2013 for the purposes of manufacturing and selling specialized beef jerky.

7. Prior to Plaintiff's incorporation, Plaintiff's principal, Jeff King, was and still is a professional caddy on the PGA Tour. Jeff King created unique recipes for beef jerky that he would originally make himself.

8. Jeff King then began offering his beef jerky to members of the PGA Tour to eat while golfing in major tournaments in the United States and throughout the world.

9. Jeff King's product was such a success that word spread throughout the PGA Tour, their friends and the general community that Jeff King's beef jerky was unique and especially tasty.

10. Jeff King began receiving requests from multiple players, caddies and the general public to buy his product. Jeff King and his business partners then created the company Kingmade Jerky to service the growing demand for his product.

11. Plaintiff then began hiring various companies to assist in the manufacturing and processing of beef jerky so the product could be distributed on a national scale.

12. That Defendant was one of the companies hired by Plaintiff on or about July 2013, to create the air-sealed packaging of the beef jerky. Defendant's packaging was to manufacture plastic bags which contained a perforated tear strip at the top of the bag and an air-sealed zip lock. Such specialized packaging was necessary to keep the product fresh so that it retained its texture and flavor after packaging.

13. That Plaintiff's product was thereafter purchased in large numbers by members of the PGA Tour, professional golfing tournaments, grocery stores, convenience stores and the general public at large.

15. Plaintiff's product was so wildly successful, that Jeff King was interviewed and advertised on several national print media outlets, including professional golfing magazines.

16. That Plaintiff's product exploded on social media and was advertised throughout the United States.

17. That Defendant holds itself out to the public as a specialist in the industry of packaging of the highest quality.

18. That shortly after Defendant began making the packaging for Plaintiff's product, customers began to complain that the plastic bags were very difficult to open. Jeff King even witnessed professional golfers using their teeth to try and open the bags.

19. That in addition to the difficulty in opening the bags, Plaintiff was receiving complaints about the shelf-life of the product itself from the beginning.

20. Plaintiff addressed these concerns with Defendant and Defendant indicated it would find a solution to the problem with its packaging.

21. Defendant decided to incorporate a laser perforation on the zip lock on the packaging to make it easier to tear open while not compromising the integrity of the air seal so the product would remain fresh. Defendant assured Plaintiff this method would solve the problem with the difficulty in opening the bags. Defendant however, did not address the issue regarding the shelf life of the product which Plaintiff was experiencing.

22. In 2014, Plaintiff began receiving even more complaints from multiple customers that product received in unopened packages was dry, moldy and of substandard flavor.

23. Plaintiff began investigating into the issue to determine how the product was defective prior to its packaging being opened.

24. Since beef jerky is a perishable product, any holes or tears in the packaging allow oxygen to enter the package and damage the product. Plaintiff initially thought there was a problem in the shipping and it was simply accidental.

25. As time went on the complaints grew and began to overwhelm Plaintiff's operation. Plaintiff obtained various professionals to research the issue to determine the cause of the defective jerky.

26. During this investigative process, Plaintiff had to recall hundreds of products, refund customers and began to get negative reviews and complaints on various social media outlets. Plaintiff's reputation was being damaged on the PGA Tour and the general public.

27. Several grocery stores and convenience stores reported issues with the product and requested recalls/refunds further damaging Plaintiff's reputation.

28. Plaintiff is a new company advertising a product already widely known and sold all over the United States. The reputation of superior quality and flavor of Plaintiff's product is

what distinguished it from the hundreds of other beef jerky products with already established names in the industry.

29. That as the complaints and requests for recalls/refunds continued, Plaintiff desperately tried further testing and measures to discover the root of the problem or Plaintiff would be out of business.

30. Plaintiff's facility that actually produces the beef jerky itself, C&C Processing, began its own testing of the packaging and products to try and solve the issue. C&C discovered that the initial pressure seal of the bags was defective and would allow for "micro-tunneling," whereby oxygen would enter the packaging thereby damaging the product. Further testing established that Defendant's laser perforation method to make the packages easier to tear; actually perforated the air sealed packaging itself. This was allowing even more oxygen into the packages from the top of the bags causing the beef jerky to expire at rapid rates.

31. In February 2015, C&C contacted Defendant regarding the results of its testing and conclusive proof that Defendant's methods in creating the packaging were defective and causing oxygen to enter the packages.

32. Defendant indicated it would investigate the issue but never actually informed Plaintiff of what it could do to remedy the issue or what it had discovered. Defendant merely informed Plaintiff that the type of packaging used by Plaintiff was at risk of having "some issues."

33. That as a result of months of testing, recalls and expenditure of significant sums of money, Plaintiff lost significant time for company growth. Plaintiff's reputation in the industry was also being damaged on a daily basis.

34. That defective packaging for perishable food is a disaster for an emerging company like Plaintiff trying to break into an established and extremely competitive market.

35. That as a result of Defendant's defective packaging, Plaintiff was forced to locate alternate packaging companies which cost Plaintiff time and money since Plaintiff was unable to get product on the market.

**COUNT I**
**BREACH OF CONTRACT**

36. Plaintiff adopts and re-alleges paragraphs 1-35 as though fully set forth herein.

37. That Plaintiff hired Defendant to manufacture plastic bag packaging for its beef jerky product.

38. That Plaintiff paid Defendant for manufacturing the plastic bag packaging for Plaintiff's beef jerky product.

39. That Plaintiff instructed Defendant to manufacture said packaging so that it would be air-tight and not allow oxygen into the bags which would damage the beef jerky product.

40. That Defendant agreed to manufacture said plastic bag packaging so that it would contain air-tight seals so oxygen would not enter the plastic bags.

41. That Plaintiff performed all of its obligations under the agreement of the parties.

42. That Defendant failed to perform its obligations under the agreement, and breached said agreement by manufacturing defective packaging which allowed oxygen into the plastic bags thereby damaging the beef jerky product.

43. That as a direct and proximate result of Defendant's breach, Plaintiff sustained monetary damages for lost product, lost prospective business and economic advantages and reputational damage in the industry.

6

## COUNT II
## UNJUST ENRICHMENT (alleged in the alternative)

44. That Plaintiff paid Defendant money to manufacture plastic bag packaging for its beef jerky products.

45. That Defendant retained the benefit of financial compensation from Plaintiff for manufacturing said packaging.

46. That the packaging manufactured by Defendant was defective.

47. That the money Defendant received from Plaintiff for producing defective products caused a detriment to Plaintiff while Defendant retained the benefit of payment for said defective products.

48. That as a direct and proximate result of the detriment Plaintiff sustained, it sustained monetary damages, lost prospective business and economic advantages and reputation in the industry.

49. That Defendant retaining said benefit violates the fundamental principles of justice, equity, and good conscience.

## COUNT III
## ESTOPPEL (allege in the alternative)

50. That Defendant made an unambiguous promise to Plaintiff that it would manufacture plastic bag packaging for Plaintiff's beef jerky product which would be air-sealed and prevent oxygen from entering the packaging.

51. That Plaintiff relied upon Defendant's promise to manufacture said packaging in the manner represented.

52. That Defendant was aware Plaintiff would rely upon said promises and Plaintiff did in fact rely on the aforementioned promises.

7

53. That Plaintiff's reliance on Defendant's promises were reasonable and foreseeable by Defendant.

54. That as a direct and proximate result of Defendant's breach of the aforesaid promises, Plaintiff sustained monetary damages, lost prospective business and economic advantages and reputational damage in the industry.

## COUNT IV
## PRODUCT LIABILITY

55. Plaintiff adopts and re-alleges paragraphs 1-35 as through fully set forth herein.

56. That Defendant manufactured the plastic bag packaging for Plaintiff's beef jerky products.

57. That at the time the packaging left Defendant's factory and control, it was defective.

58. That the defective packaging caused Plaintiff's food product to expire, become moldy and dangerous to consume.

59. That Defendant knew of the intended purpose and use of the packaging at the time it manufactured it.

60. That the defective packaging was unreasonably dangerous.

61. That as a direct and proximate result of Defendant's defective products, Plaintiff sustained monetary damages, lost prospective business and economic advantages and reputational damage in the industry.

## COUNT V
## BREACH OF EXPRESS WARRANTY

62. Plaintiff adopts and re-alleges paragraphs 1-35 as though fully set forth herein.

63. Defendant expressly warranted proper and non-defective packaging for the Plaintiff's product would be sold and distributed.

64. Defendant failed to provide the packaging as warranted in that it sold and delivered the defective packaging that which caused the food product to contaminate.

65. Plaintiff provided Defendant with notice of the breach in February of 2015, by informing Defendant that the packaging was defective.

66. As a direct and proximate result of the breach of the warranty by the Defendant, the Plaintiff sustained monetary damages, lost prospective business and economic advantages and reputational damage in the industry.

## COUNT VI
## BREACH OF IMPLIED WARRANTY 810 ILCS 5/2-314 *et seq.*

67. Plaintiff adopts and re-alleges paragraphs 1-35 as though fully set forth herein.

68. The Illinois Uniform Commercial Code, 810 ILCS 5/2-314, provides:

"... (2) Goods to be merchantable must be at least such as: (a) pass without objection in the trade under the description of the... agreement... (c) are fit for the ordinary purpose for which goods of that type are used.... (e) are adequately contained, packaged and labeled as the... agreement may require...."

69. Because of the defective packaging, Defendant violated the Implied Warranty of Merchantability it provided to Plaintiff. The packaging caused air to seep into the product. The food product spoiled and was unusable for human consumption, as such contaminated food is unfit for the purpose for which it is ordinarily used.

70. Furthermore, the beef jerky product was inadequately contained or packaged as it was negligently packaged by the Defendant. The design, thickness and durability of the packaging by Defendant was not suitable for use and sale in the production of food or food products.

9

71. That as a direct and proximate result of Defendant's breach, Plaintiff sustained monetary damages, lost prospective business and economic advantages and reputational damage in the industry.

## COUNT VI
### BREACH OF CONTRACT FOR SALE OF GOODS 810 ILCS 5/2-715 *et seq.*

72. Plaintiff adopts and re-alleges paragraphs 1-35 as though fully set forth herein.

73. That Plaintiff hired Defendant to manufacture plastic bag packaging for its beef jerky product.

74. That Plaintiff paid Defendant for manufacturing the plastic bag packaging for Plaintiff's beef jerky product.

75. That Plaintiff instructed Defendant to manufacture said packaging so that it would be air-tight and not allow oxygen into the bags which would damage the beef jerky product.

76. That Defendant agreed to manufacture said plastic bag packaging so that it would contain air-tight seals so oxygen would not enter the plastic bags.

77. That the packaging manufactured by Defendant was defective.

78. That Plaintiff accepted the promised goods without noticing the hidden defect in the plastic bag packaging.

81. That upon discovery of the defect, Plaintiff immediately notified Defendant at its earliest opportunity of the defect.

82. That Defendant failed to perform its obligations under the agreement, and breached said agreement by manufacturing defective packaging which allowed oxygen into the plastic bags thereby damaging the beef jerky product.

83. That Plaintiff is entitled to incidental and consequential damages pursuant to the Illinois Uniform Commercial Code, 810 ILCS 5/2-715.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests this court enter judgment in its favor and against Defendant in one or more of the following ways:

    (a) Compensatory damages for the financial loss Plaintiff sustained;

    (b) Alternatively, damages for the unjust enrichment by Defendant;

    (c) Monetary damages for the marketing and reputational damages sustained by Plaintiff;

    (d) Incidental damages for the financial loss Plaintiff sustained;

    (e) Consequential damages for the financial loss Plaintiff sustained;

    (f) Costs and reasonable attorney fees as permitted by statute;

    (g) Any further relief this court deems necessary, equitable and just.

PLAINTIFF DEMANDS TRIAL BY JURY.

                              Respectfully submitted:

                              /s/ Bryan T. Butcher
                              Attorney for Plaintiff

Bryan T. Butcher
McKnight, Kitzinger & Pravdic, LLC
117 N Jefferson Street, Suite 301
Chicago, Illinois 60661
(312) 463-9400
bbutcher@mkplawyers.com